IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LEE ANDREW CLAYTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:13cv941-CSC |
| | ) | (WO) |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I.  Introduction**

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq., alleging that he was unable to work because of a disability.  His application was denied at the initial administrative level.  The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ also denied the claim.  The Appeals Council rejected a subsequent request for review.  The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  The parties have consented to the United States

---

[1]  Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment, pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1. Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). Substantial evidence is "more than a scintilla," but less than a preponderance; it "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (quotation marks omitted). The court "may not decide the facts anew, reweigh the evidence, or substitute . . . [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (alteration in original) (quotation marks omitted).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A. Introduction**. The plaintiff was 46 years old on the date of administrative hearing. He has not completed high school. (R. 49). His past relevant work experience includes work as a truck loader, packager, auto detailer, store laborer, janitor, laborer in a meat factory, and chicken hanger. (R. 37). Following the hearing, the ALJ concluded that the plaintiff has severe impairments of "obesity; moderate mixed sensory motor peripheral neuropathy of both lower extremities; lumbar disc desiccation and mild disc bulging at L4-5

3

and L3-4; diabetes mellitus; and drug abuse." (R. 27). The ALJ concluded that the plaintiff was unable to perform his past relevant work, but, using the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P., App. 2, as a framework and relying on the testimony of a vocational expert, she also concluded that there were significant number of jobs in the national economy that the plaintiff could perform. (R. 38-39). Thus, the ALJ concluded that Clayton was not disabled because he has the residual functional capacity to perform light work with restrictions. (R. 28-29).

**B. Plaintiff's Claim**. As stated by the plaintiff, the sole issue for the Court's review is whether "[t]he ALJ failed to properly evaluate the opinion of Plaintiff's Treating Physicians." (Doc. # 11, Pl's Br. at 4).

## IV. Discussion

A disability claimant bears the initial burden of demonstrating an inability to return to his past work. *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990). In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and his family or friends, and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983). The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v. Schweiker,* 662 F.2d 731, 735-36 (11th Cir. 1981). The ALJ must also state, with sufficient

4

specificity, the reasons for her decision referencing the plaintiff's impairments.

> *Any* such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual *shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.*

42 U.S.C. § 405(b)(1) (emphases added). Within this analytical framework, the court addresses the plaintiff's claim.

Clayton argues that the ALJ failed to give great weight to the opinion of his treating physician, Dr. Gogan, and his treating chiropractor, Charles Pershing. (Doc. # 11, Pl's Br. at 4). According to Clayton, if the ALJ gave great weight to the opinions of these two sources, he would be found disabled. (*Id*.) The law in this circuit is well-settled that the ALJ must accord "substantial weight" or "considerable weight" to the opinion, diagnosis, and medical evidence of the claimant's treating physician unless good cause exists for not doing so. *Jones v. Bowen,* 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). The Commissioner, as reflected in her regulations, also demonstrates a similar preference for the opinion of treating physicians.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

*Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 CFR § 404.1527 (d)(2)).

The ALJ's failure to give considerable weight to the treating physician's opinion is reversible

error. *Broughton*, 776 F.2d at 961-62.

There are, however, limited circumstances when the ALJ can disregard the treating physician's opinion. The requisite "good cause" for discounting a treating physician's opinion may exist where the opinion is not supported by the evidence, *or* where the evidence supports a contrary finding. Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, *or* unsupported by objective medical evidence. *See Jones v. Dep't. of Health & Human Servs.*, 941 F.2d 1529, 1532-33 (11th Cir. 1991); *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987). The weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence of the claimant's impairment. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). The ALJ must articulate the weight given to a treating physician's opinion and must articulate any reasons for discounting the opinion. *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987).

On November 10, 2010, Clayton presented to chiropractor Charles Pershing, Jr. ("Pershing") complaining of "very severe low back pain." (R. 384, 389). An examination demonstrated that Clayton had reduced range of motion in his lumbar region. (R. 383, 390).

> The motion palpation of L3-L5 demonstrated decreased vertebral segmental function with soft tissues surrounding these joints. The straight leg raise test

is positive on the left.  Rotation of the lumbar spine is limited.

(*Id*.)  Clayton was advised to rest and return for therapy.  (*Id*.)  On November 12, 2010, Clayton returned to Pershing who noted that lumbar maneuvers were reduced and there was "mild to moderate antalgic posture due to pain." (R. 382, 392).  On November 16, 2010, Pershing saw Clayton again.  Lumbar muscle spasms were noted but the treatment goal was to improve the range of motion in the lumbar spine.  (R. 381, 391).

On November 29, 2010, after three visits, Pershing completed a medical statement regarding Clayton's physical abilities and signed a "proof of disability" form.  (R. 377-80, 418-21)  According to Pershing, Clayton was "permanently and totally unable to engage in any substantial, gainful activity" due to a "torn lumbar disk." (R. 377, 418).  On his medical statement, Pershing indicated that Clayton was disabled due to low back pain, disk disorder, spinal arthritis and severe scarring of lumbar disk.  (R. 378, 419).  Pershing also indicated that Clayton could not work any hours during the day, could not bend or lift, and was in extreme pain.  (*Id*.)

A chiropractor is not considered an "acceptable source" and, thus, his opinion cannot establish the existence of an impairment.  *See* 20 C.F.R. §§ 404.1513(a), 416.913(a).  *See also Crawford*, 363 F.3d at 1160.  More importantly, however, the ALJ sufficiently discredited Pershing's opinion that Clayton was permanently and totally disabled.

> The claimant was referred and received three chiropractic treatment from Charles Pershing, D.C., a chiropractor, in November 2010 from 10th to the 16th (Exhibit 5F). In November 2010, Dr. Pershing stated the claimant has lumbar disc herniation and weakness of spine and legs (Exhibit 5F6). As

      discussed below, the claimant does not have disc herniations nor have examinations shown any neurological abnormalities, such as weakness. Although Dr. Pershing had treated the claimant only three times during a one week period, on November 29, 2010, he completed a correspondence and opined that the claimant was permanently and totally unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be long-continued and indefinite duration (Exhibit 9F2). Specifically, the chiropractor further opined the claimant could work zero hours in a workday and suffers from "extreme" pain (Exhibit 9F3). This opinion is entitled to no probative weight. Dr. Pershing treated the claimant for one week. As discussed below, the claimant does not have disc herniations and examinations shown any neurological abnormalities, such as weakness. The claimant has repeatedly been described as being in "no acute" distress, inconsistent with "extreme" pain.

(R. 32).

      The ALJ's decision to discount Pershing's assessment is supported by substantial evidence. Although Clayton testified that his most disabling impairment is pain in his back, (R. 57-58), Pershing's treatment records do not support his assessment of the severity of Clayton's impairments. Pershing's assessment of Clayton was based on three office visits in one week. Although Pershing indicated that he reviewed x-rays, those x-rays are not part of the medical record. Pershing also indicated that he reviewed an April 16, 2009 MRI. (R. 379, 420). The April 2009 MRI revealed "[f]ocal right side disc protrusion at L4-5 with right impingement" but no spinal stenosis, neural foramen narrowing or tears were evident. (R. 387, 781). In addition, a May 6, 2010 MRI demonstrated the following.

> . . . The lumbar vertebral bodies are normal in height and alignment. Signal change in body of L5 is unchanged since 04-16-09 and thought to represent a hemangioma or other benign lesion.
>
> The L1-2, L2-3, and L3-4 levels are unremarkable.

> At L4-5, the disc is decreased in signal indicating desiccation. There is mild diffuse bulging of the disc with no evidence of focal disc protrusion or central spinal stenosis. No significant neural foraminal narrowing is evidence.
>
> At L5-S1, the disc is decreased in signal indicating desiccation. There is a *tiny* central annular tear at this level. There is no evidence of disc protrusion, central spinal stenosis, or foraminal narrowing.
>
> IMPRESSION:
>
> 1. Disc desiccation and mild disc bulging at the L4-5 level with no evidence of focal disc protrusion, central spinal stenosis, or foraminal narrowing. Comparison with prior study of 04-16-09 demonstrates that *although the disc bulging is somewhat eccentric to the right at the L4-5 level, there is no evidence of focal disc protrusion or foraminal narrowing or nerve impingement on the present study*.
>
> 2. Tiny central annular tear at L5-S1 level, which is otherwise unremarkable.

(R. 690-91) (emphasis added).

Consequently, the MRI scans do not corroborate the severity of Clayton's limitations, and Pershing's treatment notes do not support the level of disability he attributes to Clayton. After reviewing the medical evidence in the record, the ALJ discredited Pershing's assessment of the severity of Clayton's back impairment. The ALJ may disregard the opinion of a physician, provided that he states with particularity reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987).

In addition, the ALJ discredited the opinion of Dr. Frank Gogan. Clayton presented to Dr. Grogan on July 19, 2011, complaining of back pain. (R. 424).

> Vague hx of 20 yrs back pain lifting weights. Apparent herniated disc with LLE radicular pain. Worked at Flowers bakery 2 yrs. Last employed by them in 2009.

9

(*Id*.)  Clayton had decreased flexion in the lumbar region. (*Id*.)  There is no indication of Dr. Grogan's prescribed course of treatment for Clayton.

Clayton returned to Dr. Gogan on August 2, 2011, complaining that "anything he does to raise money hurts his back."  (R. 425).  According to Clayton, he was in persistent pain. (*Id*.)  At this appointment, Dr. Gogan prescribed Lortab. (*Id*.)  This is the extent of Dr. Gogan's treatment records of Clayton.

Nonetheless, on September 2, 2011, Dr. Gogan completed a medical statement regarding Clayton's back pain.  (R. 423).  According to Dr. Gogan, Clayton's pain was moderate to severe; he could stand for 15 minutes and sit for 20 minutes; and he could occasionally lift 5 pounds. (*Id*.)  Finally, instead of marking how many hours Clayton could work, Dr. Gogan noted that "Pt. says *no* hrs." (*Id*.)

After reviewing the medical evidence, the ALJ assigned Dr. Gogan's opinion no probative weight because

> [a]t the time Dr. Gogan completed this assessment, he had treated the claimant on only two occasions (he has subsequently seen the claimant on one more occasion.)  There is no indication that Dr. Gogan had access to any objective tests; he questioned whether the claimant had a herniated disc, which objective tests shows that he does not.  Dr. Gogan noted that he based his assessment on the claimant's subjective allegations, which are not supported by the record.

(R. 33).

The ALJ acknowledged Dr. Gogan's treatment of Clayton but discounted his opinion. As with Pershing, Dr. Gogan's assessment of Clayton was based on limited visits – only two office visits over a two week period.  There is no indication that Dr. Gogan reviewed any x-

10

rays or MRI scans to corroborate Clayton's complaints. It does not appear that Dr. Gogan is an orthopaedic specialist. Dr. Gogan's conclusory opinion is not substantiated by his treatment notes, and his notes do not support the level of disability he attributes to Clayton.

In addition, the other medical evidence of record supports the ALJ's decision to discount the opinions of Pershing and Dr. Gogan. On April 21, 2011, Dr. Wlaid Freij performed a physical examination of Clayton, and completed a medical source statement. (R. 398-410). Clayton complained of back pain. (R. 398). Dr. Freij reviewed the 2009 MRI which "showed evidence of a hemangioma in the L5 body and disc desiccation at L4/L5 with mild diffuse disc bulging." (*Id*.) Dr. Freij noted no limitations in flexion in his cervical spine, thoracolumbar spine, and lumbosacral spine. (R. 399). Dr. Freig noted "[t]enderness over the paraspinal muscles in the LS spine on the left side." (*Id*.) Dr. Freig's impression included "[l]ower back pain with radiating pain to the left lower extremity suggestive of LS radiculopathy. A MRI done last year revealed evidence of disc desiccation at L4/L5. There was also evidence of a hemangioma at the L5 body." (R. 400). Dr. Freij opined that Clayton could perform work related activities, but was limited in his ability to carry or lift. (*Id*.)

Finally, although Clayton complained numerous times of lower back pain, he was treated conservatively with pain medication.

"Even though Social Security courts are inquisitorial, not adversarial, in nature, claimants must establish that they are eligible for benefits." *Ingram v. Comm'r of Soc. Sec.,* 496 F.3d 1235, 1269 (11th Cir. 2007) (citing *Doughty v. Apfel,* 245 F.3d 1274, 1281 (11th

Cir. 2001)). *See also Holladay v. Bowen,* 848 F.2d 1206, 1209 (11th Cir. 1988). This the plaintiff has failed to do. Based upon its review of the ALJ's decision and the objective medical evidence of record, the court concludes that the ALJ properly rejected the opinions of Pershing and Dr. Gogan regarding the limitations caused by Clayton's back pain.

Pursuant to the substantial evidence standard, this court's review is a limited one; the entire record must be scrutinized to determine the reasonableness of the ALJ's factual findings. *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992). It is not the province of this court to reweigh evidence, make credibility determinations, or substitute its judgment for that of the ALJ. Instead the court reviews the record to determine if the decision reached is supported by substantial evidence. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## V. Conclusion

The court has carefully and independently reviewed the record, and concludes that the decision of the Commissioner is supported by substantial evidence.

A separate final order will be entered affirming the Commissioner's decision.

Done this 4th day of September, 2014.

       /s/Charles S. Coody
       CHARLES S. COODY
       UNITED STATES MAGISTRATE JUDGE